## ELFMON v. UNITED STATES.

**Civ. No. 282.**

United States District Court, E. D. North Carolina, Fayetteville Division.

May 20, 1953.

James M. Roberts, Atlanta, Ga., for plaintiff.

Charles P. Green, U. S. Atty., Raleigh, N. C., for defendant.

GILLIAM, District Judge.

The plaintiff has sued the United States for recovery of $6,979.13, which he paid in accord with a finding of deficiency by the Commissioner in payment of income taxes for the year 1942, known as the "forgiveness year". The payment included a 50 percent fraud penalty and interest. Upon request of the Bureau agents, the plaintiff signed a Form 870, by which he agreed that the amount which he paid was due by him and that he would not file a claim for refund. The taxpayer objected to the assessment of the fraud penalty at the time he signed. It appears that this agreement was not approved or consented to by either the Secretary of the Treasury or the Commissioner of Internal Revenue and it does not purport to be a closing agreement.

The taxpayer here filed his 1942 income tax return in 1946, as he was permitted to do because of his military service. The 1942 return that he filed understated his true income for that year and no tax was paid upon the return. The Government concedes that had the taxpayer filed a correct 1942 return he would not have had to pay any additional tax, because he would have been entitled to the so-called forgiveness benefits of the Current Tax Payment Act of 1943, including a special benefit granted to men in military service with respect to income they earned in 1942.

The Commissioner of Internal Revenue determined a deficiency against the taxpayer for the year 1942 because of the understatement of income on his return and also assessed the taxpayer with the 50 percent civil penalty provided for in Section 293(b), Internal Revenue Code, 26 U.S.C.A. § 293(b). The Government contends that it was proper to deny the taxpayer the benefits of the forgiveness provisions of the Current Tax Payment Act because that Act specifically does not apply in any case "in which additions to the tax for such taxable year [1942] are applicable by reason of fraud." Section 6, 26 U.S.C.A. § 1622 note.

The taxpayer was a physician engaged in general practice when he was inducted into the armed service on May 19, 1942. He was discharged in November, 1945. He filed a return in 1942 for the year 1941, but, as permitted by law, filed no returns for the years 1942, 1943, 1944 and 1945, until early in 1946 when he filed such returns.

Taxpayer, in 1937, entered into partnership with a Dr. Allgood, and this partnership was existent when he was inducted into service. For a while he drew a salary of

$200 per month; from July 1, 1938 through the year 1939 he received 25 percent of the net profits; for the year 1940, 33⅓ percent; and thereafter 50 percent. He received 50 percent of the profits through June, 1942, 33⅓ percent for the month of July, 25 percent for the months of August and September.

The partnership return for the period from January 1, 1942 through September, 1942, was filed by Dr. Allgood while the taxpayer was overseas. This return showed receipts by taxpayer during this period of $3,528.46.

Early in 1946 the taxpayer consulted an accountant who had prepared the partnership returns, including the return for 1942, and his individual returns prior to his induction into service. He advised the accountant of the amount of his army pay, the amount of his other income outside the partnership, and the amount of his deductible items, and asked the accountant to prepare his returns for 1942, 1943, 1944 and 1945. The accountant had in his files a copy of the partnership return which he prepared for the year 1942 at the instance of Dr. Allgood and taxpayer instructed the accountant to use this in reporting his partnership income for that year.

Accordingly, the return was prepared, showing receipts from the partnership from January 1st through September, 1942, to have been $3,528.46. Actually, the amount received by the taxpayer from the partnership in 1942 was $13,507.71.

The evidence also discloses that for the year 1941 the taxpayer filed a return showing receipts from the partnership at $5,156.26. According to the evidence, his actual receipts were approximately $18,000 in that year.

It is found, and there is no real controversy on the point, that the taxpayer understated his partnership income for 1942 by $9,979.25. The real controversy here is whether the taxpayer filed this false return knowingly and with fraudulent purpose and whether, if he did so, this deprives him of the benefits of the forgiveness provisions of the Current Tax Payment Act of 1943.

■ The evidence clearly establishes that the taxpayer acted knowingly and with a fraudulent intent.

This finding might be supported in part at least by the fact that taxpayer grossly understated his income on his 1941 return. The evidence with respect to the 1941 return was admitted over plaintiff's objection. While his counsel concedes that, perhaps, under some circumstances such evidence would be admissible on the question of intent, they insist that evidence of what the taxpayer did in 1942 when he filed a return for 1941 is not closely enough related to what he did in 1946 when he filed a return for 1942 to make it of probative value, and therefore it should not be considered.

■ No good reason appears to me why the evidence as to the 1941 return should not be considered here. Moreover, "Evidence of intent to evade income tax in one year is competent as evidence of intent to evade the tax in a later year." United States v. Sullivan, 2 Cir., 98 F.2d 79, 80. Malone v. United States, 7 Cir., 94 F.2d 281, 287. It is true that the acts were separated by a period of four years, but the 1942 return in question here was the very next return filed by plaintiff after the 1941 return, even though it was not filed until 1946.

However, aside from the evidence with respect to the 1941 return, it is my finding that the gross understatement of income on the 1942 return coupled with the other evidence as to that return, is sufficient to establish fraud in a civil case. The taxpayer here contends that the Government has the burden of proving fraud; the Government asserts that in civil refund suits the burden is on the taxpayer to establish the absence of fraud. It does not appear necessary to decide this question since, even assuming the burden to be on the Government, that burden has been sustained by the evidence.

It is true, as counsel for taxpayer asserts, that the taxpayer was a very busy man during the six months of 1942 before he went into service, but it is also true that he was an educated and intelligent man. The payments to him by the partnership in

the months from January to September were for the most part in large amounts: three checks for more than $1,400, three for more than $1,300, one for more than $1,200, and three in amounts less than $1,000—and each check as received was deposited in taxpayer's personal bank accounts. It is incredible that in 1946, even after three years overseas in combat as his counsel stresses, the taxpayer was merely honestly mistaken in stating that his income from the partnership in 1942 was less than $4,-000 when it was in fact over $13,500. Perhaps he did not recall the exact amount of his income, though this could have been determined by reference to his bank account, but I am convinced, however, that he knew beyond question his income from this source was substantially greater than he reported and that he acted with a fraudulent purpose.

Inasmuch as the taxpayer would not have had any additional tax had he filed a correct return and thereby become entitled to forgiveness benefits, the question arises as to why he knowingly filed a false return. On the evidence one or all of three motives may have induced the taxpayer's action: (1) He may have wished to avoid calling into question his clearly false return for 1941; (2) he may have wished to shield his partner, who filed the fraudulent partnership return for 1942; (3) he may not have been fully informed of the technicalities of the Current Tax Payment Act so that he believed if he made a correct return for 1942 he would be liable for additional tax and he acted to evade that supposed liability. It is true that the taxpayer testified that he did not think it important to be accurate in his return for 1942, since he was informed that his tax would be forgiven anyway. But it appears clearly from the evidence that he was precise and accurate in reporting numerous deductible items where the sums involved were less than a hundred dollars. The accountant testified that he told the taxpayer his tax would be forgiven only after the taxpayer supplied the information necessary to prepare the return.

It is my conclusion from the evidence that all these motives prompted the taxpayer's fraud.

The plaintiff's position is that, even though it be found he acted knowingly and with one or even all of the three fraudulent purposes, he is nonetheless entitled to recover because his fraud was not of the character to deprive him of the benefits of the Current Tax Payment Act. The plaintiff's position, in substance, is that a fraudulent return for the tax year 1942 is not enough to deprive him of the benefits of the Current Tax Payment Act. In addition, the taxpayer asserts, it must first be found that, giving him the benefits of the Current Tax Payment Act, he would still have owed an additional tax and it must next be found that he filed a fraudulent 1942 return for the purpose of evading that liability. Stated another way, taxpayer is asserting that he should first be given the forgiveness benefits of the Current Tax Payment Act in order to determine whether he is entitled to those benefits. I do not agree that the Current Tax Payment Act should, in the circumstances of this case, be so construed.

It is true that the taxpayer would not have had to pay any more taxes had he told the truth on his 1942 return. This is so, however, if and only if he was entitled to the forgiveness benefits provided for in the Current Tax Payment Act of 1943. In that Act, Congress was careful to specify that those benefits should not apply where the *tax for the year 1942* is subject to additions for fraud.

So far as the general public was concerned, of course, the return for the year 1942 had been filed before the 1943 Act became effective, and undoubtedly in this situation the taxpayer who had theretofore filed a fraudulent 1942 return would not receive the benefits of the 1943 Act regardless of whether there would have been additional tax liability upon an honest return.

In the case of this taxpayer we have a somewhat different situation, inasmuch as his return for 1942 was not filed until after

the enactment of the Current Tax Payment Act of 1943. Because of his military service the taxpayer was permitted by law to delay the filing of his 1942 return. As the Government contends, it "would be paradoxical indeed, simply because this (delay) was permitted, to hold the taxpayer to a lesser standard of truth on his return. In granting the privilege of filing a late return, Congress certainly did not intend also to grant the privilege of filing a fraudulent return." Nor does the law compel any such paradoxical result.

The Current Tax Payment Act of 1943 became effective on June 9th of that year. In order to ease the change-over to a pay-as-you-go tax program and to avoid the heavy burden that otherwise would have been placed on some taxpayers in the year 1943, Congress included in the Act the so-called "forgiveness provisions", which were to apply in the absence of fraud.

The Current Tax Payment Act did not, however, repeal the tax laws imposing a liability on 1942 income. The taxpayer's 1942 return was filed under those laws and had he correctly reported his income for that year an additional 1942 tax liability would have resulted. The Current Tax Payment Act in no wise eliminated the fact that the taxpayer had incurred a liability under the tax laws of 1942 or that he owed a tax for that year. Congress merely declared that the tax debt so owed for 1942 would be discharged if certain conditions were satisfied—and, in substance, one of those conditions was that there be an honest return for the year 1942 and not a fraudulent effort to conceal the 1942 tax liability. Taxpayer, here, has failed to satisfy that condition and he is not entitled to the benefits of that Act.

It may be admitted that the conclusion announced here is based on a strict and somewhat literal construction of the 1943 Act, but such construction appears thoroughly justified. One who has been offered the discharge of an indebtedness should not be heard to complain if he is held to a strict compliance with the conditions upon which the discharge is offered. The taxpayer here is hardly blameless. His fraud created a situation which imposed upon the Government the expense of an investigation to determine the correct facts about his 1942 income and his fraud interfered in other ways with the orderly administration of the internal revenue laws.

It is true, as counsel for the taxpayer asserts, that the law does not favor forfeitures, but the Government does not seek to work a forfeiture. The right to the forgiveness of the 1942 tax liability was never acquired by the taxpayer, because he failed to comply with the conditions upon which that right was to be given. It does not appear to me that the evidence should "be construed strongly against the Government" as counsel contend.

Having reached the conclusion as set forth, the question whether Dr. Elfmon is precluded from the recovery by the execution of the Form 870 is not reached.

A Judgment for the Government will be entered.